**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| TIMOTHY ROSS and KAYLA KLEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs<br><br> v.<br><br>NISSAN OF NORTH AMERICA, INC, and NISSAN MOTOR CO., LTD.<br><br>    Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Timothy Ross and Kayla Klein ("Plaintiffs"), by and through their attorneys, bring this action against Nissan of North America, Inc. and Nissan Motor Co., Ltd. ("Defendants" or "Nissan"), individually and on behalf of all others similarly situated, and allege as follows:

## I.  INTRODUCTION

1.  Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased any 2019-2021 Nissan Pathfinder or INFINITI QX60 vehicle in the United States ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold or leased by Defendants.

2.  Well before Nissan began manufacturing, marketing and distributing the Class Vehicles, Nissan knew that the Class Vehicles contained one or more design and/or manufacturing defects that can cause their continuously variable transmission ("CVT") to malfunction ("CVT Defect"). A "CVT" is a type of automatic transmission that does not use conventional gears to achieve the various ratios required during normal driving. Instead, it uses a segmented steel belt between pulleys that can be adjusted to change the reduction ratio in the transmission. This is supposed to occur smoothly and continuously. Like a conventional transmission, a CVT is

electronically controlled by a Transmission Control Module ("TCM"). On information and belief, the Class Vehicles all come equipped with the same or substantially similar CVT.

3. Since 2003, Nissan has implemented CVT transmissions in many of its vehicles manufactured for the U.S. market. Nissan's widespread adoption of CVT technology, however, has been consistently plagued by the CVT Defect which renders CVT-equipped Nissan vehicles unreliable and unreasonably dangerous to operate.

4. Like many other Nissan owners, numerous Class Vehicle owners have reported a significant delay in their Class Vehicle's response while attempting to accelerate from both from a stop and while in motion. This delay in response is often accompanied by the engine revving while the driver depresses the gas pedal with little to no increase in vehicle speed. Class Vehicle owners have also experienced and reported stalling, jerking, lurching, juddering, and/or shaking while operating their Class Vehicles, as well as premature transmission failure.

5. The CVT Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers and pedestrians for obvious reasons. These safety hazards include being unable to maintain the proper speed to integrate seamlessly into the flow of traffic, especially on highways or freeways, putting drivers at risk of being rear ended or otherwise causing an accident unless they pull off the road.

6. In addition to these obvious safety hazards, the cost to repair the CVT Defect can be exorbitant. The Class Vehicles thus differ materially from the product Nissan intended to sell. Nissan intended to produce vehicles with CVTs that shift smoothly and continuously. Instead, Nissan produced vehicles that do not accelerate when prompted to accelerate, and that shake, shudder, jerk and judder.

7. Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed the true nature and extent of the CVT Defect from Plaintiffs and Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter. Had Plaintiffs and

prospective Class Members known about the CVT Defect, they would not have purchased the Class Vehicles or would have paid less for them.

8.     Plaintiffs are informed and believe, and based thereon allege, that despite notice of the CVT Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, dealership repair orders and prior experience with earlier model vehicles with the same or substantially similar CVTs, Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the CVT Defect.

9.     Plaintiffs are further informed and believe, and based thereon allege, that despite being on notice of the CVT Defect, Defendants regularly deny the existence of the CVT Defect until after consumers' New Vehicle Limited Warranty Powertrain Coverage has expired or require payment to repair the CVT Defect even while the Class Vehicles are under warranty.

10.     Nissan knew of and concealed the CVT Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale or lease and thereafter.  As a result of their reliance on Defendants' omissions, owners and lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## II.     PARTIES

### A.     Plaintiffs

### Timothy Ross

11.     Plaintiff Timothy Ross resides in Quincy, Massachusetts.  In 2021, Mr. Ross purchased a new 2020 Nissan Pathfinder from Quirk Nissan in Quincy, Massachusetts.  Prior to purchase, Mr. Ross spoke with a dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle.  Mr. Ross was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had Mr. Ross been informed that his vehicle

suffered from the CVT Defect, he would not have purchased it or would have paid less for it. Mr. Ross's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

12.    In about the Spring of 2022, Mr. Ross's vehicle began to exhibit the CVT Defect. For example, Mr. Ross's vehicle experiences hesitation when attempting to accelerate.

13.    At all times, Mr. Ross has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Kayla Klein**

14.    Plaintiff Kayla Klein resides in Pittsfield, Massachusetts. In 2020, Ms. Klein purchased a Certified Pre-Owned Nissan Pathfinder from Haddad Nissan in Pittsfield, Massachusetts. Prior to purchase, Ms. Klein spoke with a dealer sales representative about the vehicle, inspected the sticker posted on the vehicle, and test drove the vehicle. Ms. Klein was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Klein been informed that her vehicle suffered from the CVT Defect, she would not have purchased it, or would have paid less for it. Ms. Klein's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

15.    Ms. Klein's vehicle has exhibited the CVT Defect on numerous occasions. For example, the vehicle hesitates when attempting to accelerate. Sometimes this hesitation is accompanied by excessive revving, sometimes there is no response. Ms. Klein has taken her vehicle back to the dealer on multiple occasions but has not been provided with a suitable repair or replacement. Ms. Klein was told by the dealer that the issue was the alternator, which she paid a $100 deductible out-of-pocket to replace, but the problems she has experienced continue.

16.    At all times, Ms. Klein has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### B. **Defendants**

17.     Defendant Nissan North America, Inc. ("NNA") is a California corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee 37067 and doing business in Tennessee and throughout the United States.

18.     Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan.  NML manufactures and distributes automobiles and related parts.  It also provides financing services. NML delivers a comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries.  NML is the parent and 100% owner of NNA.

19.     At all relevant times, NNA and NML were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

20.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

21.     INFINITI is the luxury division of Nissan, and the INFINITI QX60 is essentially a luxury version of the Pathfinder.  On information and belief the Pathfinder and QX60 have the same or substantially similar design, and the same or substantially similar engine and CVT.

### III.     **JURISDICTION**

22.     This is a class action.

23.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  This court also has federal question jurisdiction

over this action under 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law. This Court has personal jurisdiction over NNA because its principal place of business is in Franklin, Tennessee, and Defendants' otherwise have sufficient minimum contacts with Tennessee, and/or otherwise intentionally avails themselves of the markets within Tennessee, through the promotion, sale, marketing and distribution of their vehicles in Tennessee, so as to render the exercise of jurisdiction by this Court proper and necessary.

## IV.  VENUE

24.  Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Middle District of Tennessee.

## V.  NISSAN'S KNOWLEDGE OF THE CVT DEFECT

25.  For years, Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles. Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles nationwide.

26.  Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Nissan and its dealerships; specifically, they are the intended beneficiaries of Nissan's warranties. The dealerships were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

27.  The CVT Defect causes the Class Vehicles' to unexpectedly malfunction by hesitating, stalling, jerking, lurching, revving, shaking, juddering and/or failing prematurely. The CVT Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on driver's ability operate the Class Vehicle as expected.

28.  Plaintiffs are informed and believe, and based thereon allege, that, prior to placing the Class Vehicles in the stream of commerce, Nissan became aware of the CVT Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production

testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers. On information and belief, Nissan actively monitors and records consumer complaints made to Nissan's network of dealers as well as all service and repair work done related to the CVT Defect at its network of dealers

29. Nissan CVT transmissions have been plagued with the same or similar recurrent problems (i.e., hesitation, shaking, juddering, premature failure, etc.) for over a decade. In 2009 Nissan voluntarily doubled the powertrain warranty coverage of 5 years/60,000 miles to 10 years/120,000 miles for a large part of its fleet, including the 2003-2010 Murano; 2007-2010 Versa SL; 2007-2010 Sentra; 2007-2010 Altima; 2007-2010 Maxima; 2008-2010 Rogue; and 2009-2010 Cube.[1] Nissan also reported that "in the unlikely event that your vehicle's transmission should need repair beyond the extended warranty period we are working to decrease the cost of repair."[2]

30. Nissan continued to experience such trouble with its CVTs that in December 2013 Nissan's then-CEO, Carlos Ghosn, announced that Nissan would increase its oversight of CVT supplier JATCO, Ltd.[3] Nissan further explained that it was necessary to increase its oversight of JATCO because continued customer service issues had begun to cut into Nissan's profits.[4] CVT issues, however, continue to plague Nissan vehicles.

---

[1] Frequently Asked Questions, available at:
 https://web.archive.org/web/20100323050249/http://www.nissanassist.com/faqs.php?menu=3.
[2] *See* Customer Satisfaction Program, CVT Program Details available at:
https://web.archive.org/web/20100124032242/http://www.nissanassist.com/ProgramDetails.php?menu=2.
[3] Nissan Presses Jatco to end CVT glitches, Automotive News at:
https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (Dec. 2, 2013).
[4] *Id.*

31.     TSBs issued by Nissan to its dealers, and other remedial actions it has taken concerning the Class Vehicles and other vehicles with the same or substantially similar CVT, evidence Nissan's knowledge of the CVT Defect.

32.     On information and belief, the 2019-2021 Nissan Pathfinder and INFINITI QX60 have the same or a substantially similar transmission as other recent-model Nissan vehicles equipped with a CVT, including but not limited to previous Nissan Pathfinder and INFINITI QX60 vehicles. Nissan has extended the warranty on many of these vehicles, and offered to reimburse owners and lessees who paid for transmission-related repairs and replacements during the extended warranty period in connection with class action settlements. *See, e.g., Gann, et al. v. Nissan North America, Inc.*, Case No. 3:18-cv-00966 (M.D. Tenn.) (warranty extension and reimbursement program applicable to 2013-2016 Nissan Altima vehicles equipped with a CVT); *Stringer, et al. v. Nissan North America, Inc.*, Case No. 3:21-cv-00099 (M.D. Tenn.) (warranty extension and reimbursement program 2014-2018 Nissan Rogue and 2015-2018 Nissan Pathfinder and INFINITI QX60 vehicles equipped with a CVT). Nissan has offered no such relief to 2019-2021 Nissan Pathfinder and INFINITI QX60 owners and lessees.

33.     Nissan has issued scores of TSBs for the Class Vehicles' CVTs. In many instances, Nissan simply updated these TSBs to include later-model vehicles as it continued to use CVTs with the same fundamental flaws.

34.     For example, on October 31, 2019 Nissan issued TSB NTB15-013e applicable to the 2013-2020 Pathfinder, and TSB ITB15-010d applicable to the 2014-2020 INFINITI QX60, among other CVT-equipped vehicles. These TSBs caution:

> **IMPORTANT**: Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque convertor. In severe cases this debris can block or restrict flow and may cause damage to the newly serviced CVT.

These TSBs go on to advise technicians that when a CVT, control valve or torque convertor replacement is necessary the transmission fluid coolers must be flushed. The first iteration of

NTB15-013e was published on March 12, 2015 and amended multiple times over the years to include successive years of CVT-equipped models. *See* NTB15-013 (March 12, 2015); NTB15-013a (September 9, 2015); NTB15-013b (April 7, 2016); NTB15-013c (June 9, 2016); NTB15-013d (April 24, 2017). Similarly, the first iteration of ITB15-010d was published years earlier and amended numerous times. *See* ITB15-010 (March 12, 2015); ITB15-010a (September 9, 2015); ITB15-010b (April 7, 2016); ITB15-010c (April 24, 2017); ITB15-010d (October 31, 2019). Thus, Nissan was aware of this issue years before the first Class Vehicle was sold.

35. Also by way of example, on September 30, 2020 Nissan issued TSB NTB17-039k applicable to the 2013-2019 Pathfinder, among other CVT-equipped vehicles, in the event that "[t]he customer reports a transmission judder (shake, shudder, single or multiple bumps or vibration)" and DTC P17F0 or P17F1 (both relating to CVT judder) is stored. This TSB prescribes various service procedures, including replacement of the CVT sub-assembly and/or replacement of the valve body. The first iteration of this TSB was issued on April 27, 2017; it has been amended eleven times. *See* NTB17-039 (April 27, 2017); NTB17-039a (May 2, 2017); NTB17-039b (June 29, 2017); NTB17-039c (October 12, 2017); NTB17-039d (October 26, 2017); NTB17-039e (March 5, 2018); NTB17-039f (March 14, 2018); NTB17-039g (October 8, 2019); NTB17-039h (October 30, 2019); NTB17-039i (March 11, 2020); NTB17-039j (March **25**, 2020); NTB17-039k (September 30, 2020). Thus, Nissan was aware of this issue as well years before the first Class Vehicle was sold

36. Nissan has continued to issue TSBs addressing Class Vehicle CVT issues.

37. On information and belief, Defendants issued the above TSBs to address problems being caused by the CVT Defect. Defendants had and have a duty to disclose the CVT Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge and/or access to material facts about the Class Vehicles and their CVTs that were and are not known to or reasonably discoverable by Plaintiffs and other Class Members; and, because Defendants have actively concealed the CVT Defect from their customers. Further, because the

none of the above TSBs were issued as part of a formal recall, they were much more likely to be overlooked by dealers, and unknown to consumers.[5]

38.    Nissan ultimately abandoned the CVT altogether in the 2022 Pathfinder and QX60 which come equipped with a nine-speed automatic transmission.[6]

## VI.    EXAMPLE CONSUMER COMPLAINTS

39.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the CVT Defect.

40.    Nissan monitors consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA") and, on information and belief, elsewhere on the Internet. Federal law requires automakers like Nissan to be in close contact with the NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to the NHTSA, including field reports, customer complaints, and warranty data. *See* Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, Pub. L. No. 106-414, 114 Stat.1800 (Nov. 1, 2000).

41.    The following example complaints filed by consumers with the NHTSA and which continue to accrue demonstrate that the CVT Defect is a widespread, dangerous and unresolved problem that has continued with Nissan CVT-equipped Pathfinder vehicles through time unabated from one model year to the next.[7]

### 2015-2018 Nissan Pathfinder

**NHTSA ID Number: 10765148 Incident Date September 1, 2015:** AFTER PURCHASING THE VEHICLE FROM AUTOMATION NISSAN DALLAS THE TRANSMISSION , CVT, FAILED AT 2300 MILES. THERE WAS NO HEAVY USE ON THE TRANSMISSION. WE HAVE NOT EVEN TOWED WITH IT. THIS IS UNACCEPTABLE AND THE DEALER

---

[5] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls.  Dealers generally search for TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

[6] *See* https://www.autoweek.com/news/future-cars/a35408092/the-2022-nissan-pathfinder-goes-automatic and https://www.edmunds.com/infiniti/qx60/2022.

[7] Spelling and grammatical mistakes reproduced as in the original.

REFUSES TO DO ANYTHING BEYOND FIX THIS LEMON. PICKED UP VEHICLE, 9/17/15 AND ON THE MORNING OF 9/18/15 THE FUEL LIGHT CAME ON. WE DID NOT FUEL THE VEHICLE OR OPEN THE FUEL CAP 9/18/15 THE CHECK ENGINE LIGHT CAME ON AGAIN AND THE VEHICLE IS BACK AT THE DEALER.

**NHTSA ID Number: 10789823 Incident Date September 10, 2015:** CVT TRANSMISSION SHUDDERS AT LOW SPEED (20-40 MPH) WITH LIGHT THROTTLE APPLICATION. THIS PROBLEM HAS BEEN EXPERIENCED SINCE WE PURCHASED THE VEHICLE ON 9/10/2015

**NHTSA ID Number: 10790327 Incident Date October 8, 2015:** VEHICLE WAS TAKEN INTO SHOP BECAUSE OF SHUDDER IN TRANSMISSION AND HESITATION FROM STOP WHEN APPLYING ACCELERATOR. THE NISSAN DEALER INSTALLED A NEW VALVE BODY IN THE TRANSMISSION WHICH SEEMED TO STOP THE SHUDDER UNTIL TODAY WHEN IT HAS RETURNED. THE HESITATION FROM STOP PROBLEM WAS NOT FIXED AND I RETURNED THE PATHFINDER A SECOND TIME TO FIX THIS PROBLEM BUT SINCE IT DID NOT THROW A CODE AND COULD NOT BE DUPLICATED IT WAS NOT FIXED. THE HESITATION PROBLEM IS AN ITERMITTENT PROBLEM BUT WHEN IT HAPPENS THE VEHICLE DOES NOT MOVE FORWARD WHEN THE GAS IS FIRST APPLIED FOR A SECOND OR TWO. I HAVE ALMOST HAD TWO ACCIDENT BECAUSE OF THIS PROBLEM WHEN PULLING INTO TRAFFIC AND THE CAR WILL NOT MOVE WHEN GAS APPLIED. THE SHUDDER PROBLEM AS RETURNED AND CAN BE FELT AT AROUND 40MPH.

**NHTSA ID Number: 10808069 Incident Date October 1, 2015:** JUDDER IS FOUND BETWEEN 20-25 MILES FOR MORE THAN 5 SECOND WHEN ACCELERATING SMOOTHLY. THE MECHANIC RECORDED THE JUDDER AND SENT IT TO THE ENGINEER. THE ENGINEER AT CORPORATE NISSAN TOLD US THAT IT IS A NORMAL THING BUT ANY CAR SHOULDN'T HAVE A JUDDER(ESPECIALLY 2015 NEWEST MODEL). A JUDDER ALSO SHOWS IN THE HIGH SPEED, BUT NOT AS MUCH AS SLOW SLEEP. A JUDDER ALSO APPEARS WHEN THE CAR SLOWS DOWN TO A STOP. I HAVE TO WAIT UNTIL CHECK ENGINE LIGHT IT UP FOR THEM TO FIX THE ISSUE. IT DOES NOT MAKE SENSE WHEN THERE IS A RECORD OF JUDDER BUT WAIT UNTIL SOMETHING HAPPENS TO THE CAR.

**NHTSA ID Number: 10928332 Incident Date May 2, 2016:** WHILE TAKING OFF FROM 0-20MPH THE CAR WILL HESITATE AND JERK. TOOK THE VEHICLE TO NISSAN SERVICE DEPT. BACK IN MAY 2016 AND THEY COULD NOT FIND NOTHING WRONG WITH CAR. NOW IT HAS BEEN HAPPENING MORE FREQUENTLY AND WE TOOK IT BACK ON 11/18/16 AND THE SERVICE DEPT. SAID THEY STILL CAN'T FIND NOTHING WRONG WITH VEHICLE BECAUSE THERE ARE NOT CHECK ENGINE CODE POPPING UP, SO THEY NEEDED PERMISSION TO HAVE A SERVICE TECH TAKE IT HOME TO SEE IF HE CAN SEE WHAT WE ARE EXPERIENCING AND WILL FOLLOW UP WITH US TOMORROW. I BELIEVE THIS PROBLEM STARTED BACK IN EARLY 2015 WHEN WE BOUGHT THE CAR, BUT IT WOULD ONLY HAPPEN SO RARELY THAT I NEVER THOUGHT ABOUT IT UNTIL MY WIFE WHO DRIVES IT EVERY DAY BROUGHT IT UP TO MY ATTENTION.

**NHTSA ID Number: 10955750 Incident Date February 18, 2017:** WHEN STARTING FROM STOP ( AT A STOP SIGN OR TRAFFIC LIGHT) THE VEHICLE PERIODICALLY WILL NOT ACCELERATE. THE VEHICLE HAS BEEN IN THE SHOP TWO TIMES NOW WITH NO CHANGE. THE FIRST TIME IT WAS IN THEY DID A SOFTWARE UPDATE AND THOUGHT THAT WOULD CORRECT IT, IT DID NOT. THE SECOND TIME THEY SAID IT WAS BECAUSE THE VEHICLE WAS IN 2WD AND IT WAS WET OUT. IT HAS

HAPPENED AGAIN WITH THE VEHICLE IN AUTO AND THE GROUND BONE DRY. I CALLED NISSAN CONSUMER AFFAIRS AND STARTED A CASE. I WAS TOLD TO GET A SECOND OPINION. THE VEHICLE IS UNSAFE BECAUSE WHEN PULLING INTO A LANE OF TRAFFIC YOU MAY NOT MOVE FOR A FEW SECONDS ANS ON COMING TRAFFIC MAY NOT STOP.

**NHTSA ID Number: 11034516 Incident Date September 22, 2017:** MY VEHICLE IS A 2017 NISSAN PATHFINDER. WHEN DRIVING AND COMING TO A STOP, THEN ATTEMPTING TO ENTER TRAFFIC OR CLIMB A HILL, THERE IS NO ACCELERATION. IT HAS A HESITATION WHICH IS VERY CONCERNING WHEN ATTEMPTING TO MERGE INTO TRAFFIC. MY VEHICLE ALMOST APPEARS TO SPUTTER OUT. THIS HAS OCCURRED WITH ME SEVERAL TIMES BUT WITH FRIENDS AND FAMILY IN THE VEHICLE AT LEAST FOUR TIMES. THE DEALER DID ATTEMPT TO REMEDY THE SITUATION WITH A RECALLED PART ON THE TRANSMISSION, HOWEVER, IT IS STILL HAPPENING. I HAVE BEEN DEALING WITH THIS ISSUE SINCE FEBRUARY 2017, STILL ONGOING.

**NHTSA ID Number: 11121811 Incident Date August 21, 2018:** TL* THE CONTACT OWNS A 2017 NISSAN PATHFINDER. WHILE DRIVING 35 MPH, THE VEHICLE JOLTED FORWARD, THE CHECK ENGINE INDICATOR ILLUMINATED, AND THE VEHICLE STALLED. THE VEHICLE WAS TOWED TO NISSAN OF BRADENTON (1611 CORTEZ RD W, BRADENTON, FL 34207, (941) 755-1571) WHERE IT WAS DETERMINED THAT THERE WAS A JUDDER CODE FOR THE TRANSMISSION. THE CONTACT WAS ALSO INFORMED THAT THE TRANSMISSION BODY BELT NEEDED TO BE REPLACED AND, IF THE FAILURE PERSISTED, THE TRANSMISSION WOULD ALSO NEED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT CONTACTED. THE APPROXIMATE FAILURE MILEAGE WAS 25,000. THE VIN WAS NOT AVAILABLE.

**NHTSA ID Number: 11173825 Incident Date January 19, 2019:** ON OR ABOUT JANUARY 19, 2019 WHILE ATTEMPTING TO MAKE A LEFT HAND TURN AT THE INTERCEPTION OF ROSCOE AND WOODMAN AVE. IN PANORAMA CITY, CALIFORNIA AND WHEREAS WITH NO WARNING NOR ANY INDICATOR LIGHT CAME ON EITHER BEFORE OR AFTER THE VEHICLE STALLED WHEN I TRIED TO QUICKLY ACCELERATE BUT INSTEAD THE TRANSMISSION STALLED AND ENDED UP THRUSTING THE VEHICLE FORWARD ONLY TO LEAVE ME THE MIDDLE OF THE INTERCEPTION AND EXPOSED TO THE ONCOMING TRAFFIC AND OF WHICH IT CAME TO SCREECHING STOP AND LITERALLY COMING WITHIN INCHES OF POSSIBLY T-BONING OUR VEHICLE AND OR CAUSING A SERIOUS ACCIDENT.

**NHTSA ID Number: 11193263 Incident Date April 1, 2019:** IN THE LAST SEVERAL WEEKS, I AM EXPERIENCING LOSS OF ACCELERATION FOR MY NISSAN PATHFINDER 2015 (33,000 MILES). FOR SOME REASONS, THERE IS NO ACCELERATION NOR RPM INCREASED WHEN I FLOORED THE GAS PEDAL FOR SEVERAL SECONDS AFTER RELEASING THE GAS PEDAL (COASTING) DUE TO TRAFFIC STOPS OR WANT TO MAKE A TURN OR AFTER FULL STOP. THE CAR WAS COASTING AROUND 20 MPH AND DIDN'T ACCELERATE.

**NHTSA ID Number: 11222931 Incident Date June 25, 2019:** PATHFINDER RECAL. CAR "SHUTTERS" AND "STUTTERS" WHEN TRANSITIONING IN BETWEEN GEARS. ADDITIONALLY, WHILE IN DRIVE, ENTERING A FREEWAY ON RAMP, MOVING AT APPROXIMATELY 30 MPH, THE CAR WOULDN'T ACCELERATE, IT WAS AS IF IT WAS IN NEUTRAL. THE CAR HAS 69,000 MILES ON IT, AND FOR THE PAST YEAR, AT

APPROXIMATELY 53,000 MILES, IT'S BEEN "STUTTERING AND SHUTTERING" WHILE TRANSITIONING IN BETWEEN GEARS.

**NHTSA ID Number: 11254715 Incident Date August 14, 2019:** WHEN ACCELERATING AND MAINTAINS NORMAL COMMUTER SPEEDS 34-70MPH THE TRANSMISSION IS LOUD AND IN INSTANCES JERKS AS IF IT IS NOT CATCHING THE NEXT GEAR. MY CAR IS 4YRS OLD WITH 77K MILES AND THERE SHOULDN'T BE A NEED FOR A NEW TRANSMISSION, WHICH LOCAL NISSAN DEALER SAYS I NEED. REVIEW HAVE SHOWN THIS IN THE PAST SO I WANT TO MAKE AWARE THAT THE PROBLEM IS NOT FIXED.

**NHTSA ID Number: 11267852 Incident Date September 22, 2019:** WHEN DRIVING AT DIFFERING SPEEDS, THE TRANSMISSION REDUCES, THEN STOPS APPLYING POWER TO THE WHEELS, AND ACTS AS THOUGH IT'S IN NEUTRAL. THIS HAS HAPPENED AT FREEWAY SPEEDS, DOWN TO BELOW 20 MPH, AND A ALL OPERATING TEMPERATURES. THE BRAKE PEDAL WAS NOT TOUCHED IN CONJUNCTION WITH THE GAS PEDAL, AND THE VEHICLE WAS ALWAYS IN DRIVE. THIS HAS NOW HAPPENED TO US A MINIMUM OF 6 TIMES, WITH NO RESOLUTION FROM NISSAN.

**NHTSA ID Number: 11222931 Incident Date January 13, 2020:** THIS VEHICLE JERKS AND STUTTERS AT LOW SPEEDS, LIKE THE TRANSMISSION DOESN'T KNOW WHAT TO DO AND ALSO DOESN'T ALWAYS SHIFT INTO THE GEAR IT SHOULD BE IN. I CAN ALSO FEEL THAT THE CAR SEEMS FAINTLY JITTERY AT HIGHWAY SPEEDS, EVEN ON NEW PAVEMENT. I HAVE RESEARCHED THIS AND THE 2015 PATHFINDERS HAVE A CVT TRANSMISSION LIKE THE 2013-2014 MODELS THAT WERE, APPARENTLY, RECALLED THERE ARE MANY COMPLAINTS AND CONCERNS FOR THIS MODEL YEAR AS WELL, I WONDER WHY NO ACTION HAS BEEN TAKEN TO RESOLVE THIS CONSISTENT DEFECT.

**NHTSA ID Number: 11364341 Incident Date October 12, 2020:** MY CAR HAS LESS THAN 28000 MILES AND I HAD TO HAVE A NEW TRANSMISSION.

**NHTSA ID Number: 11424875 Incident Date July 13, 2021:** MY CAR HIT 62,000 MILES, IT STARTED HAVING TRANSMISSION ISSUES. IT SHAKES, MAKES LARGE NOISES, THE CAR TRIES TO STALL, HAVING ISSUES ACCELERATING, AND LOSS POWER. I AM CONCERNED THAT THE CAR WILL TURN OFF OR BROKE DOWN WHILE DRIVING

**NHTSA ID Number: 11439126 Incident Date October 22, 2021:** VEHICLE STARTED HESITATION BETWEEN 20 AND 30 MPH. TOOK TO NISSAN OF WOOD RIVER AND PAID FOR DIAGNOSTIC TEST AND CAME BACK WITH CODE TO REPLACE TRANSMISSION. VEHICLE COULD HAVE BROKE DOWN ON HIGHWAY. TOOK TO TRANSMISSION SHOP, THEY VERIFIED AND REPLACED TRANSMISSION AT 127K MILES. THERE WERE NEVER ANY WARNING LIGHTS OR MESSAGES THAT APPEARED.. COST OVER $4500.00 FOR REPLACEMENT. NISSAN IS AWARE OF THE CVT TRANSMISSION PROBLEMS AND SHOULD RECALL.

### 2019-2021 Nissan Pathfinder and INFINITI QX60

**NHTSA ID Number: 11403883 Incident Date March 17, 2021:** VEHICLE WAS PERFECTLY FINE, BUT THEN BEGIN TO STALL OUT ON 3/1 IN MOTION ON THE STREET, WHILE TURNING, & BACKING UP. THEN ON 3/18 WHEN ATTEMPTING TO BACK UP THE CAR IT COMPLETELY STOPPED. CAR IS AT THE SHOP NOW WITH REPORTED TRANSMISSION ISSUES.

**NHTSA ID Number: 11477481 Incident Date August 3, 2022:** WAS MERGING ONTO AN INTERSTATE. PRESSED THE GAS PEDAL TO ACCELERATE AND THERE WAS NO ACCELERATION. THE ENGINE RPM INCREASED TO ABOUT 4000 BUT THE TRANSMISSION FELT LIKE IT WENT TO NEUTRAL. RELEASED GAS PEDAL AND PRESSED IT AGAIN. ONCE AGAIN NO ACCELERATION AND THE RPM'S WENT TO ABOUT 4000. IT FELT LIKE THE TRANSMISSION TRIED TO DOWN-SHIFT BUT WENT TO NEUTRAL INSTEAD. ON THE THIRD TRY, THE TRANSMISSION DOWNSHIFTED TO A LOWER GEAR AND THE VEHICLE ACCELERATED TO HIGHWAY SPEEDS. THIS WAS AN UNSAFE CONDITION BECAUSE THERE WERE CARS COMING AT ME AT 75 TO 80 MPH AND I WAS UNABLE TO ACCELERATE. THERE WERE NO WARNING LIGHTS, MESSAGES OR PRIOR INSTANCES TO GIVE ME WARNING THAT THIS MIGHT HAPPEN. VEHICLE HAS ONLY ABOUT 2500 MILES ON IT. I HAVE NOT VISITED THE DEALER YET TO HAVE IT INSPECTED.

**NHTSA ID Number: 11452580 Incident Date January 16, 2022:** ON JANUARY 16, 2022, MY HUSBAND AND I HAD TO BE ESCORTED OFF OF THE ROAD BY A POLICE OFFICER. LUCKILY, TURNING OFF THE PATHFINDER RESULTED IN RESETTING WHATEVER OCCURRED. AT THAT TIME, THE VEHICLE WOULD NOT ACCELERATE PAST 20 MPH AND SHOWING ABOUT 4000 RPMS. THIS HAPPENED A FEW MORE TIMES IN OUR NEIGHBORHOOD, CAUSING US TO TURN IT OFF AND RESTART IN THE MIDDLE OF THE ROAD. SINCE THEN, THE NISSAN DEALERSHIP HAS CHANGED THE BATTERY, CLAIMING THAT IT WAS THE ONLY COMPUTER READING. WITHIN TWO DAYS OF THE NEW BATTERY, IT HAPPENED AGAIN TO MY HUSBAND IN ORLANDO. THE DEALERSHIP IS UNABLE TO REPLICATE THE PROBLEM, AND MY HUSBAND AND I ARE AFRAID AS HE USES THE PATHFINDER FOR TRAVEL WITH BUSINESS TO ATLANTA. THESE "REVVING" EVENTS OCCUR RANDOMLY, AND THE DEALERSHIP IS UNABLE TO CONTACT THE NISSAN ENGINEERS UNTIL THEY ARE ABLE TO REPLICATE THE PROBLEM. IT'S TWO DAYS NOW THE PATHFINDER HAS BEEN IN THE SHOP WITH NO PROGRESS. MY HUSBAND AND I ARE AFRAID AS THIS IS OUR WORK VEHICLE AND ONLY RELIABLE SOURCE OF TRANSPORTATION.

**NHTSA ID NUMBER: 11459577 Incident Date April 4, 2022:** THE CONTACT OWNS A 2019 INFINITI QX60. THE CONTACT STATED THAT WHILE DRIVING AT AN UNDISCLOSED SPEED, THERE WAS A KNOCKING SOUND COMING FROM THE VEHCILE WHILE ACCELERATING AND THE VEHICLE SHUDDERED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE ITW AS DIAGNOSED WITH DTC: P17F1 FOR CONTINUOUSLY VARIABLE TRANSMISSION (CVT) FAILURE. THE DEALER INFORMED THE CONTACT THAT THE CVT TRANSMISSION NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED AND REMAINED AT THE DEALER. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND ADVISED THE CONTACT TO FILE A COMPLAINT WITH THE NHTSA. THE FAILURE MILEAGE WAS APPROXIMATELY 119,000.

42.     Although Defendants were aware of the widespread nature of the CVT Defect in the Class Vehicles, and the grave safety risk posed by it, Defendants took no steps to notify customers of the CVT Defect or to provide them with any relief.

43.     Customers have reported the CVT Defect in the Class Vehicles to Defendants directly and through its dealers.  As a result of these reports and its own internal testing, among

other things, Defendants were fully aware of the CVT Defect contained in the Class Vehicles throughout the Class Period. Nevertheless, Defendants actively concealed the existence and nature of the CVT Defect from Plaintiffs and Class Members at the time of purchase or repair and thereafter. Specifically, Defendants:

a. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the CVT Defect;

b. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their CVTs were not in good working order, were defective, and were not fit for their intended purpose; and

c. Failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their CVTs were defective, despite the fact that Defendants learned of such defects as early as 2013, if not before.

44. Defendants have deprived Plaintiffs and Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the CVT Defect contained in the Class Vehicles.

45. Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered to their customers a suitable repair or replacement of parts related to the CVT Defect free of charge, and have not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the CVT Defect.

46. Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

47. As a result of the CVT Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's CVT is not defective and will not place vehicle occupants at an increased risk of an accident. Plaintiffs and Class Members further expect and

assume that Defendants will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defect to its customers prior to selling or leasing the vehicle, or offer a suitable repair. They do not expect that Defendants would fail to disclose the CVT Defect to them, and continually deny the defect.

## VII.   TOLLING OF THE STATUTE OF LIMITATIONS

48.   Plaintiffs and Class Members were not reasonably able to discover the CVT Defect, despite their exercise of due diligence.

49.   Despite their due diligence, Plaintiffs and Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their continuously variable transmission was concealed from them.

50.   In addition, even after Class Members contacted Nissan and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their continuously variable transmissions, they were routinely told by Nissan and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

51.   Hence, any applicable statute of limitation, if any, has been tolled by Nissan's knowledge, active concealment, and denial of the facts alleged herein. Nissan is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their continuously variable transmissions.

## VIII.   CLASS ACTION ALLEGATIONS

52.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class and Subclass pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

53.   The Classes and Subclasses are defined as:

**Nationwide Class:** All persons or entities who purchased or leased any 2019-2021 Nissan Pathfinder or INFINITI QX60 vehicle in the United States.

**Massachusetts Subclass:** All members of the Nationwide Class who purchased or leased any 2019-2021 Nissan Pathfinder or INFINITI QX60 vehicle in the State of Massachusetts.

54.     Excluded from the Classes and Subclasses are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class definitions, and to add further subclasses, if discovery and further investigation reveal that the Class and subclasses should be expanded or otherwise modified.

55.     **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

56.     **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes and Subclasses in that each representative Plaintiff, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants that is subject to the CVT Defect.  The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing their malfunctioning CVT and related parts as a result of the CVT Defect, and the value of their vehicles has been diminished.  Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

57.     **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes and Subclasses that predominate over any question affecting only individual Class Members.  These common legal and factual questions include the following:

a. whether the Class Vehicles suffer from the CVT Defect;

b. whether the CVT Defect constitutes an unreasonable safety hazard;

c. whether Defendants know about the CVT Defect and, if so, how long Defendants have known of the Defect;

d. whether the defective nature of the Class Vehicles' CVT constitutes a material fact;

e. whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' CVT to Plaintiffs and Class Members;

f. whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g. whether Defendants knew or reasonably should have known of the CVT Defect contained in the Class Vehicles before they sold or leased them to Class Members; and,

h. Whether Defendants are liable for the consumer protection, common law and warranty claims asserted herein.

58. **Adequate Representation:** Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

59. **Predominance and Superiority**: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and

Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

60.     Plaintiffs have sent Defendants notice of their violations of Massachusetts General Laws Ch. 93A, § (the Massachusetts Consumer Protection Act) demanding that it take remedial action. If Nissan fails to do so, Plaintiffs will amend this Complaint to state a cause of action and seek all appropriate relief to which Plaintiffs and Class Members are entitled under the Act.

## FIRST CAUSE OF ACTION

(Breach of Implied Warranty, Mass. Gen. Laws Ch. 106 § 2-314, *et seq*., on behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclass)

61.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

62.     Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Massachusetts Subclass.

63.     Class Vehicles are "goods" and Nissan is a "seller" and "merchant" within the meaning of Mass. Gen. Laws Ch. 106, § 2-314.

64.     Plaintiffs were the intended users and true consumers of the Class Vehicles that they purchased from authorized Nissan dealerships. They both used their vehicles as intended by Nissan and in a manner that was foreseeable.

65.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

66. The Class Vehicles were not adequately labeled because their labeling failed to disclose the CVT Defect and did not advise consumers of the danger posed by it prior to experiencing the CVT Defect firsthand.

67. Nissan's actions have deprived Plaintiffs and Class Members of the benefit of their bargain and have caused the Class Vehicles to be worth less than what Plaintiffs and other Class Members paid.

68. As a direct and proximate result of Nissan's breach of implied warranty, Plaintiffs and Class Members received goods whose condition substantially impairs their value. Plaintiffs and Class Members have been damaged by the diminished value of their Class Vehicles.

69. Plaintiffs and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Nissan's breach of the implied warranty.

## SECOND CAUSE OF ACTION

(Fraudulent Omission behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclass)

70. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

71. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Massachusetts Subclass.

72. Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

73. Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their CVTs.

74. Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

a. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

b.      Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their CVTs have a dangerous safety defect until after they purchased or leased the Class Vehicles;

c.      Defendants knew that Plaintiffs and Class Members could not reasonably have been expected to learn about or discover the CVT Defect prior to purchase or lease; and

d.      Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiffs and Class Members at the time of sale and thereafter.

75.      The facts concealed or not disclosed by Defendants to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them.  Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' CVTs, they would not have purchased or leased them, or would have paid less for them.

76.      Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' CVTs in order to induce Plaintiffs and Class Members to act thereon.  Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment.

77.      Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

78.      As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

79.      Plaintiffs and Class Members are entitled to actual damages, exemplary damages, appropriate equitable relief as well as attorneys' fees and expenses as a result of Defendants' fraudulent conduct.

## THIRD CAUSE OF ACTION

(Unjust Enrichment behalf of the Nationwide and, in the alternative, the Massachusetts Subclass)

80.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

81.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Massachusetts Subclass.

82.    As described above, Nissan sold vehicles to Plaintiffs and Class Members even though the vehicles are defective and pose a safety hazard, and Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

83.    As a result of its fraudulent acts and omissions related to the CVT Defect, Plaintiffs and Class Members paid more than they otherwise would have for the Class Vehicles, and as a result Nissan has obtained money which rightfully belongs to Plaintiffs and Class Members.

84.    Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, who, without knowledge of the Defect, paid a higher price for their vehicles than those vehicles were worth.

85.    It would be inequitable and unjust for Nissan to retain these ill-gotten gains.

86.    Nissan's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

87.    Plaintiffs and Class Members are entitled to restitution of the profits Nissan unjustly obtained, plus interest.

## FOURTH CAUSE OF ACTION

(Breach of Implied Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* on behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclass)

88.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

89.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Massachusetts Subclass.

90. Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

91. Defendants are "supplier(s)" and "warrantor(s)" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

92. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

93. Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

94. Defendants breached the implied warranty by virtue of the above-described acts.

95. Plaintiffs and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so. Defendants were also on notice of the CVT Defect from, among other sources, the complaints and service requests they received from Class Members and their dealers.

96. Defendants' breach of the implied warranty deprived Plaintiffs and Class Members of the benefit of their bargain.

97. As a direct and proximate result of Defendants' breach of the implied warranty, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

## RELIEF REQUESTED

98. Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendants, and issue an order providing the following relief:

a. Certifying the proposed Class and Subclasses, designating Plaintiffs as the named representatives of the Classes, and designating the undersigned as Class Counsel;

b. A declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT in the Class Vehicles;

c.      An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles, and in the said notice offer to replace the defective CVT contained in every Class Vehicle with a non-defective CVT;

d.      An order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners and lessees of the Class Vehicles, of an appropriate warranty extension of the Class Vehicles' CVT and related components;

e.      An order directing Defendants to offer reimbursement to all current and former owners and lessees of the Class Vehicles, for all expenses already incurred as a result of the CVT Defect, including but not limited to repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.);

f.      An order directing Defendants to immediately cease the sale and leasing of the Class Vehicles at authorized Nissan dealerships nationwide without first notifying the purchasers of the CVT Defect, and to otherwise immediately cease to engage in the violations of law as set forth above;

g.      Damages and restitution in an amount to be proven at trial;

h.      Any and all remedies to which Plaintiffs and Class Members are entitled under the law;

i.      An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j.      That Defendants disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k.      An award of attorneys' fees and costs, as allowed by law;

l.      An award of pre-judgment and post-judgment interest, as allowed by law;

m.      Leave to amend the Complaint to add further subclasses and to conform to the evidence produced at trial; and,

n.       Such other relief as may be appropriate under the circumstances.

**<u>DEMAND FOR A JURY TRIAL</u>**

99.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.


DATED:  October 14, 2022              Respectfully submitted,


                                      */s/ J. Gerard Stranch, IV*
                                      J. Gerard Stranch, IV (BPR 23045)
                                      Benjamin A. Gastel (BPR 28699)
                                      BRANSTETTER, STRANCH
                                         & JENNINGS PLLC
                                      223 Rosa L. Parks Avenue, Suite 200
                                      Nashville, Tennessee 37203
                                      Phone: 615-254-8801
                                      Fax: 615-255-5419
                                      gerads@bsjfirm.com
                                      beng@bsjfirm.com

                                      **GREENSTONE LAW APC**

                                      Mark Greenstone (*pro hac vice to be filed*)
                                      Benjamin Donahue (*pro hac vice to be filed*)
                                      1925 Century Park East, Suite 2100
                                      Los Angeles, California 90067
                                      Telephone: (310) 201-9156
                                      Facsimile: (310) 201-9160
                                      mgreenstone@greenstonelaw.com

                                      *Attorneys for Plaintiffs*