IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TIMOTHY ROSS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) NO. 3:22-cv-00830 |
| | ) JUDGE RICHARDSON |
| NISSAN OF NORTH AMERICA, INC., | ) |
| Defendant. | ) |

### **OPINION AND ORDER**

Pending before the Court is "Defendant Nissan North America, Inc.'s Motion to Compel Arbitration and Stay Litigation" (Doc. No. 28, "Motion to Compel Arbitration") and "Defendant Nissan North America, Inc.'s Motion to Dismiss Plaintiffs' First Amended Class Action Complaint" (Doc. No. 30, "Motion to Dismiss"). Both motions were supported by respective memoranda of law and otherwise fully briefed by Plaintiffs and Defendant via respective responses in opposition and replies thereto. (Doc. Nos. 29, 31, 40, 41, 47, 48). For the reasons discussed herein, the Motion to Compel Arbitration is granted. This case is stayed as to Plaintiff Carpio, and the Motion to Dismiss is denied as moot with permission to refile with arguments specific to the plaintiffs actively before the Court.

BACKGROUND

When Plaintiff Ashley Carpio bought a 2019 Nissan pathfinder, she signed a "Retail Installment Sale Contract" (hereinafter, "Contract") that contained an arbitration agreement. That arbitration agreement ("Arbitration Provision") includes a so-called delegation provision that reads in part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Doc. No. 28-1 at 7, "Delegation Provision"). It is undisputed that the Contract defines "you" to be "the buyer" (i.e., Plaintiff) and "us" to be the "Seller – Creditor" (i.e., the dealership, an entity separate from Defendant). Defendant was not a signatory to the Contract.

The end of the Arbitration Provision includes a severability clause reading:

> If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

(*Id.*, "Severability Clause").

Carpio joined this lawsuit when named as a plaintiff in the Amended Complaint (Doc. No. 22). Defendant seeks to have her claims arbitrated, i.e., decided by an arbitrator rather than by this Court; Plaintiffs oppose arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (internal citation and quotation omitted).

Under the FAA, if a party establishes the existence of a valid agreement to arbitrate, the

district court must grant the party's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3-4). Importantly, to say that there is a *valid* agreement to arbitrate is to say two separate things: (i) that an agreement to arbitrate was concluded (i.e., that arbitration (at least to some extent and under certain conditions) was agreed to; and (ii) that the (actually existing) agreement is valid, i.e., legally binding rather than void for some reason. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 n.1 (2010) ("The [issue of the] *validity* of a written agreement to arbitrate [is] whether it is legally binding, as opposed to whether it was in fact agreed to"); *id.* at 71 n.2 ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded[.]'"). !!

"[D]oubts regarding arbitrability should be resolved in favor of arbitration." *Id.* Because arbitration agreements are fundamentally contracts, the validity of a purported agreement to arbitrate is evaluated according to applicable state contract law. *Id.* Notably, under what is known as the "severability principle," the court "treat[s] a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 880 (6th Cir. 2021) (quoting *New Prime Inc. v. Oliveira*, 586 U.S. —, 139 S. Ct. 532, 538, (2019)).[1]

Some arbitration agreements contain a delegation provision or delegation clause (the two terms being interchangeable), which "is 'an [antecedent] agreement to arbitrate threshold issues concerning the arbitration agreement'" or, said differently, a contractual agreement to arbitrate arbitrability. *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (quoting *Rent-A-*

---

[1] In the instant case, neither party addresses its arguments to the Contract as a whole, but rather only to the Arbitration Provision (including the Delegation Provision and Severability Clause) included within the Contract and the extent to which a non-signatory to the Contract like Defendant can enforce the Arbitration Provision.

*Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)) (alteration in the original). While "questions pertaining to formation [of the alleged arbitration agreement] are reserved for the court's province," "those relating to enforceability and coverage are arbitrable [and must be arbitrated] in the presence of a *valid* delegation clause." *Id.* (emphasis added). However, "[i]f the *validity* of a delegation provision is challenged in response to a motion to compel arbitration, then the court, rather than the arbitrator, must address those challenges" because "[a]ttacking a delegation provision as *invalid* turns the question away from *arbitrability* of gateway issues to the *validity* of an arbitrator's authority to arbitrate arbitrability." *Id.* (emphasis added). *See also In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 879 ("even where a delegation provision purports to require arbitration of formation issues . . . courts must decide challenges to the formation or existence of an [arbitration] agreement in the first instance ('whether it was in fact agreed to' or 'was ever concluded.')." (some internal quotation marks omitted)). In short, regarding a delegation provision, *the Court* (not the arbitrator) must decide both challenges to its existence (i.e., challenges to the formation of the arbitration agreement of which it is a part) and challenges to its *validity*.[2]

To actually constitute a delegation provision, the purported delegation provision must reflect "clear and unmistakable evidence" of the parties' intent to delegate arbitrability. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 878 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2010)). "In effect, this rule reverses the usual presumption

---

[2] *If* the Court finds that *there is* a valid delegation provision, then the Court (having previously found the *existence* of an arbitration agreement), would leave to the arbitrator challenges to the *validity* of the arbitration agreement generally (meaning, the arbitration agreement as a whole except for any delegation provision therein). That is to say that the Court decides challenges to the existence of an arbitration agreement generally but not necessarily challenges to the validity of the arbitration agreement generally (which would be decided instead by the arbitrator if indeed there is a valid delegation clause). By contrast, the Court *always* decides specific challenges (i.e., challenges to the validity of a delegation provision).

in favor of arbitration when it comes to questions of 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020).

Challenges to the validity (a term interchangeable here with "enforceability") of a delegation provision must be specific to the delegation provision and not challenge the arbitration agreement as a whole. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th at 880; *Rent-A-Center*, 561 U.S. at 72. Raising a so-called "specific challenge" to a delegation clause "is hard to meet[,]" and cannot be met by "simply recycl[ing] the same arguments" used to attack the enforceability of the whole arbitration agreement. *See Becker*, 39 F.4th at 356. Instead, "the challenge must be 'specific to language in the delegation provision.'" *Battle v. Gen. Motors, LLC*, No. 22-CV-10783, 2024 WL 51025, at *2 (E.D. Mich. Jan. 4, 2024) (quoting *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021). So while "the same *legal doctrine*" can be used to "challenge both the entire agreement and a delegation provision[,]" "a party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge." *In re StockX*, 19 F.4th at 885.

The Sixth Circuit has provided the following instruction regarding challenges to a delegation provision:

> Where . . . a delegation provision calls for an arbitrator to decide the validity and enforceability of both the arbitration provision and the contract in which it appears, courts may only decide a challenge to "the delegation provision specifically," *Rent-A-Center*, 561 U.S. at 72, 130 S.Ct. 2772, "or claims that the agreement to arbitrate was '[n]ever concluded,' " *see Granite Rock*, 561 U.S. at 301, 130 S.Ct. 2847 (quoting *Buckeye*, 546 U.S. at 444 n.1, 126 S.Ct. 1204). Thus, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator" and that delegation provision stands, "a court may not decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 530; *see Rent-A-Center*, 561 U.S. at 72-73, 130 S.Ct. 2772.

> Against this backdrop, our analysis proceeds in two steps. *First*, we resolve any challenge that pertains to the *formation* or *existence* of the [arbitration] contract containing the delegation provision. If a contract exists, we proceed to step two.

> *Second*, we decide any remaining *enforceability* or *validity* challenge only if it would "affect the [delegation provision] alone" or "the basis of [the] challenge [is] directed specifically to the [delegation provision]." *Rent-A-Center*, 561 U.S. at 71-72, 130 S. Ct. 2772.

*In re StockX*, 19 F.4th at 880 (some alternations in original). So the Court first decides whether the arbitration agreement that contains the delegation clause actually was concluded—i.e., came into existence—and, if so, the Court then decides whether to reject any specific challenge (meaning, a challenge specific to the validity of the delegation clause). If (but only if) both questions are answered in the positive is there a valid delegation clause.

The Sixth Circuit has advised that whether a non-signatory can enforce a delegation provision is "a question of enforceability, not existence." *Becker*, 39 F.4th at 355-56. Such a question is one for the Court rather than the arbitrator—but *only if* the party opposing enforcement by the non-signatory clears the high bar of showing that its opposition is based on a challenge to the enforceability by the non-signatory *of the delegation provision specifically* (as opposed to the arbitration agreement generally).

## ANALYSIS

In its Motion to Compel Arbitration, Defendant argues that Carpio entered into a valid and enforceable arbitration agreement, so her claims should be stayed and arbitrated. Defendant goes on to argue that to the extent that the "arbitrability" of Carpio's claims in this case are in question, the Arbitration Provision delegated (via the Delegation Provision) that determination to the arbitrator, so that her claims should be sent to an arbitrator to decide at least arbitrability.

Plaintiffs oppose the Motion to Compel Arbitration, arguing that this Court should decide that the claims are not arbitrable. Plaintiffs argue that the decision is for this Court, because the arbitration of arbitrability (that is, the dispute over whether this claim against Defendant properly falls within the scope of the Arbitration Provision) was not delegated by "clear and unmistakable

evidence[,]" since the terms of the Delegation Provision (a) are inconsistent with the language of the Severability Clause and (b) do not name (or otherwise represent an agreement to delegate the claims of) non-signatories like Defendant.

Because the Court agrees with Defendant that the dispute over arbitrability has been delegated to the arbitrator, the Court cannot address whether Carpio's claims in this case fall within the scope of the Arbitration Provision. The Court's inquiry begins and ends with addressing the question of whether the arbitrability of Carpio's claims was properly delegated.

I.  **The plain language of the Contract requires arbitration of arbitrability, notwithstanding the Severability Clause.**

The language of a delegation provision by itself can provide the "clear and unmistakable evidence . . . that an arbitrator shall decide the 'applicability, enforceability,' or validity of both the arbitration provision and the entire contract." *In re StockX*, 19 F.4th at 879. And that is what the language of the Delegation Provision does here. Carpio agreed to arbitrate "[a]ny claim or dispute . . . including the interpretation and scope of the Arbitration Provision, and the arbitrability of the claim or dispute[.]" (Doc. No. 28-1 at 7). This language plainly says that arbitrability can be arbitrated, making the delegation clear and unmistakable. *See In re StockX*, 19 F.4th at 873.

Plaintiffs argue that the choice to delegate arbitrability was not "clear and unmistakable," because (according to Plaintiffs) the Severability Clause[3] contradicts the Delegation Provision. Plaintiffs point to the words "case" and "class action" that come later in the Severability Clause as indicating an intent that certain issues be specifically reserved for the courts.[4] This alleged

---

[3] As indicate above, the Severability Clause provides, "If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable."

[4] As stated above, the clause reads, "[i]f a waiver of class action rights is deemed or found to be unenforceable for any reason in a *case* in which *class action* allegations have been made, the remainder of

reservation, Plaintiffs argue, directly contradicts the Delegation Provision's universal language of "[a]ny claim or dispute," thus rendering the delegation not clear and unmistakable.

The questions for the Court thus become whether the reference to "case" and "class action" in the Severability Clause relating to the enforceability of waiving class action rights contradicts the Delegation Provision, and (if so) whether such a contradiction is sufficient to make the parties' intention to arbitrate arbitrability less than "clear and unmistakable." In arguing that there is a direct contradiction that prevents certainty as to the parties' intention, Plaintiffs rely on BLACK'S LAW DICTIONARY and two cases, *Wilson v. Starbucks*, 385 F. Supp. 3d 557 (E.D. Ky. 2019) and *Dennison v. Rosland Cap. LLC*, 260 Cal. Rptr. 3d 675 (Cal. Ct. App. 2020). Plaintiffs argue that "case" "has a common meaning associated only with judicial—and not arbitral proceedings" and cites to BLACK'S LAW DICTIONARY for the definition of "case" as "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity[.]" (Doc. No. 40 at 7). Likewise, Plaintiffs quote BLACK'S as defining "class action" as "[a] lawsuit in which *the court* authorizes a single person or small group of people to represent the interests of a larger group." (*Id.*). Plaintiffs argue that this language indicates "the parties' intent that a court 'in a *case*' would determine the validity of a class action waiver" and therefore is "inconsistent with the delegation clause's language that purports to delegate to an arbitrator '[*a*]*ny* claim or dispute' regarding 'the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute.'" (*Id.* (emphases added)).

Defendant replies with two text-based arguments. First, Defendant counters that "'case' is commonly used to refer to either judicial or arbitral proceedings[,]" citing to the American Arbitration Association's use of "cases" to describe its proceedings and personnel. (Doc. No. 47 at 3). Defendant also asserts that the parties "used materially different language" when they

---

this Arbitration Provision shall be unenforceable." (Doc. No. 28-1 at 7 (emphasis added at the points referenced in Plaintiffs' argument, Doc. No. 40 at 7)).

intended "to refer exclusively to court proceedings" and "different words should be given different meanings. (*Id.*). As an example, Defendant points to where the Arbitration Provision states that "any claim or dispute . . . shall . . . be resolved by . . . arbitration and *not by a court action*."[5] (*Id.* (emphasis added)).

Defendant has the better reading of the Severability Clause in this respect, and the Court agrees that neither the reference to "case" nor the reference to "class action" creates a direct contradiction of the Delegation Provision. First, as Defendant points out, "case" is commonly used to refer to arbitration proceedings, regardless of whether BLACK'S directly contemplates such use. And BLACK'S definition of "case"—"[a] civil or criminal . . . controversy at law or in equity"— does not support the existence of a contradiction between the Delegation Provision and the Severability Clause, given that many arbitrations (and the putative one sought be Defendant here) involve a "civil . . . . controversy at law." So the BLACK'S definition on which Plaintiffs rely does not facially exclude arbitration. Additionally, Defendant is also correct that the parties purposefully use language specific to courts and trial when clarity is needed.[6] (Doc. No. 47 at 3 (noting that the Delegation Provision states in pertinent part that "any claim or dispute" shall be resolved by "arbitration and not *by a court action*.")). For example, the first term of the Arbitration

---

[5] Defendant also argues that "the clauses have different subject matters: whereas the delegation provision concerns the 'interpretation and scope' of the agreement and the 'arbitrability' of a 'claim or dispute,' the severability clause concerns only the 'unenforceab[ility]' of the agreement's class action waiver." (Doc. No. 47 at 3). The Court does not reach this argument, because Defendant's other arguments are sufficiently persuasive standing alone to enable Defendant to prevail.

[6] While giving different terms different meanings could support the notion that "case" must be given a different meaning than claim or dispute, it does not require, and the text does not support, a meaning limited to a case within the courts.

Provision provides, "Either you or we may choose to have any dispute between us decided by arbitration and *not in court or by jury trial*." (Doc. No. 28-1 at 7 (emphasis added)).

The case law on which Plaintiffs rely is distinguishable by the context in which the contradictory text was found. In *Dennison*, the contradictory language was in a section of the contract different from the section in which the delegation provision was found. 260 Cal. Rptr. 3d at 209-210. A separation between contradictory terms creates an increased concern that the parties had not thought about how the terms worked together. But here, there is no such separation. The Arbitration Provision includes both the Delegation Provision and Severability Clause, and it is enclosed in its own box, separating it from the rest of the Contract. This strongly indicates that it is intended to be read as whole, and that its Delegation Provision and Severability Clause are to be read in harmony with each other. And here, those two clauses can be read together in harmony, without creating the (alleged) direct contradiction posited by Plaintiffs. For example, assuming arguendo that Plaintiffs were correct that "case" and "class action" refer only to court proceedings, those definitions do not necessarily indicate a contradiction between the Delegation Provision and Severability Clause. The Arbitration Provision begins by stating that the parties "may choose" to arbitrate, and the Delegation Provision likewise applies to disputes that are sent to arbitration "at your or our election[.]" Neither the Arbitration Provision nor the Delegation Provision *require* arbitration absent at least one party's choice to arbitrate. As such, there could be instances in which a dispute that *could be* arbitrated is instead decided in court by the choice of the parties. The Severability Clause therefore could be construed to apply only to those disputes that the parties have chosen not to arbitrate and have instead taken to court (where they are a "case," under

Plaintiffs' definition).[7] By contrast, in Plaintiffs' other case, *Wilson*, a noncontradictory reading was not possible, because the contradictory language there was in an exclusion clause that expressly excluded "actions"—which the court there deemed to mean a judicial proceeding[8]—to enforce the arbitration agreement or compel arbitration; that is, it expressly excluded the arbitration of arbitrability that the delegation clause had delegated to an arbitrator. 385 F. Supp. 3d at 561. The contradiction was direct and unavoidable, unlike here.

The Court need not determine the exact meaning of the words in the Delegation Provision and Severability Clause at this time; it is sufficient that this permissive language prevents a direct contradiction. Because the Delegation Provision and Severability Clause can be read harmoniously and to avoid contradiction, the Court at this time declines to give "case" or "class action" a reading that results in a contradiction and declines to pronounce that there is a contradiction. *See* 11 WILLISTON ON CONTRACTS § 32:5 (4th ed.) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.").[9] Without any contradiction in the terms, the Severability Clause does not affect the validity of the Delegation Provision.

---

[7] This reading could additionally be supported by the language's placement in a severability clause that identified the point at which "the remainder of this Arbitration Provision shall be unenforceable." Assuming arguendo that "case" and "class action" do refer only to cases in a court, arguably the reading would nevertheless make sense in context since the text is explaining when arbitration would not occur and would then, by extension, become a dispute for the courts.

[8] It is worth noting that Plaintiffs base their requested definition of "case" on the definition of "action" in *Wilson.* However, the definition of "action" cited there was much narrower, referring only to "a civil or criminal judicial proceeding." *Wilson*, 385 F. Supp. 3d at 561 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)).

[9] One clause about retaining the right to seek remedies in small claims court arguably may contradict the "all" language, but this clause neither was raised by Plaintiffs nor is directly related to the "case" or "class action" language that Plaintiffs did raise, so the Court will not take up this potential argument.

## II. Whether Nissan in particular can compel arbitration is a question of enforcement that has been delegated to the arbitrator.

In asserting that it is not clear and unmistakable that Plaintiff Carpio intended to delegate the arbitrability of claims against Defendant to an arbitrator, Plaintiffs note that Defendant is a non-signatory to the Contract and argue that the Delegation Provision contemplated disputes only between signatories.

The Sixth Circuit has been clear on the ability of non-signatories to invoke arbitration agreements and delegation clauses:

> where a *signatory opposed* arbitration by arguing that the non-signatory seeking to compel arbitration "lacked ability to invoke the arbitration agreement," this court held that the argument concerned an issue of "enforceability" [of the arbitration agreement generally] under the delegation provision in the contract, and thus it was a "question of arbitrability that [the] arbitration agreement delegated to an arbitrator." *Swiger*, 989 F.3d at 506-07; *see also Blanton*, 962 F.3d at 849 (concluding that the question of whether a signatory opposing arbitration with a non-signatory was an issue of enforceability, not a challenge to the " 'existence' of the arbitration agreement").

*In re StockX*, 19 F.4th at 883. In other words, an argument that a non-signatory lacks the ability to invoke the *arbitration agreement generally*—as contrasted with the *delegation provision specifically*—is one of enforceability of the arbitration agreement generally, and thus is delegated to the arbitrator under the delegation provision (which is unaffected by this argument). *See Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) ("Whether a non-signatory can enforce [an] arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." (emphasis added) (internal citation omitted)); *Becker*, 39 F.4th at 356 ("[A] valid delegation provision removes judicial purview and transfers the question of arbitrability [raised by a challenge in particular to the enforceability of an arbitration agreement] to an arbitrator."). !

Plaintiffs argue that Sixth Circuit case law does not control the issue because (according to Plaintiffs) the Delegation Provision here has an express limitation. This limitation supposedly

distinguishes it from "virtually every recent published case decided by the Sixth Circuit" because the text specifies that "you and us or our employees, agents, successors or assigns" are able to invoke the Delegation Provision. (Doc. No. 40 at 9). Plaintiffs argue that this alleged limitation in the Delegation Provision changes the matter to a specific challenge and that the Court must determine whether the intent to delegate arbitration *with Defendant* in particular was "clear and unmistakable." (*Id.* at 10). The Court disagrees and does not perceive any limitation let alone one that would so clearly distinguish it from the Sixth Circuit cases Plaintiffs cite. Simply put, the language is not an exclusive list, so Plaintiffs' argument necessarily fails.

As stated above, to qualify as a specific challenge, a challenge must be *specific* in attacking the validity of the delegation clause and must not repeat arguments going to the arbitration agreement as a whole. *See Becker*, 39 F.4th at 356. In Plaintiffs' fourth footnote, Plaintiffs signal that they are challenging the existence of a contract with Defendant (and by extension the Arbitration Provision therein) on the same "non-signatory" basis. (Doc. No. 40 at 11 n.4 ("Even if the plain language of the delegation clause did not specifically preclude from [sic] Nissan from invoking the clause, it is worth noting that no contract was ever formed between Plaintiffs and Nissan."). As such, their argument, even though focused on the language of "you" and "us" in the Delegation Provision, is fundamentally about Defendant not being a signatory to the contract and is not a specific challenge. Although nonprecedential for this Court, the Court finds *In Chevrolet Bolt EV Battery Litigation*, 633 F. Supp. 3d 921 (E.D. Mich. 2022), persuasive and helpful on this point:

> [A] party's "mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge." *StockX*, 19 F.4th at 885. That test is "hard to meet." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022).
>
> Fundamentally, however they cast their challenge, the Court sees Plaintiffs as seeking to attack "the 'existence' of any agreement—either an arbitration

> agreement or a delegation provision—between" themselves and the Defendants here. *Becker*, 39 F.4th at 356. . . . [T]he thrust of Plaintiffs' challenges to the delegation clause and the arbitration agreement are the same: Plaintiffs never intended or agreed to have disputes *with* [*defendants*] arbitrated, nor to delegate arbitrability questions to the arbitrator.
>
> But that is exactly the sort of challenge the Sixth Circuit rejected in *Becker* and that district courts have repeatedly rejected in the automobile sales context: Plaintiffs rely on "a single circumstance"—that Defendants are not signatories to the sales agreements—to challenge the enforceability of both the arbitration and delegation provisions. *See Becker*, 39 F.4th at 356. Accordingly, those challenges are "identical in substance," and Plaintiffs' challenge is not directed to the delegation provision with sufficient specificity to require the court, and not an arbitrator, to decide arbitrability. *Id.*
>
> Plaintiffs rely heavily on the first footnote of the Supreme Court's *Rent-A-Center* decision in an attempt to distinguish this case from *Becker*. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) ("[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so,") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Plaintiffs read that footnote to hold that when a party argues that they never manifested an *intent* to delegate arbitrability questions, a court may not compel arbitration absent clear and unmistakable evidence that both parties did indeed agree to delegate arbitrability questions. But here Plaintiffs *have* clearly and unmistakably agreed to delegate arbitrability questions in the terms of the sales contracts, and they do not dispute those contracts' validity. The only dispute is *who may invoke* the delegation and arbitration provisions in a contract the Plaintiffs agree that they signed. And the Sixth Circuit has repeatedly held that that very question is one of arbitrability that an arbitrator must decide when the agreement has a delegation clause. *See generally Becker*, 39 F.4th 351, 356; *Swiger*, 989 F.3d at 507-508; *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 n. 1 (6th Cir. 2020).
>
> This Court declines to depart from the Sixth Circuit's interpretation of *Rent-A-Center, Swiger*, and *Becker*, and from the recent and well-reasoned opinions of other courts in this district applying those decisions in the automobile sales context. *See Lyman*, 2022 WL 856393 at *3-4; *Cunningham*, 2022 WL 2819115 at *4-7; *Bossart*, 2022 WL 3573855 at *4.

*Id*. at 951-52. That court also rejected an argument that "you" and "us" language distinguish this case from other Sixth Circuit precedent:

> [Plaintiffs] argue that the provision can only be invoked, under its own terms, by "you" and "us," which are defined elsewhere in the sales contracts as the customer and the selling dealership . . ..

> . . . Plaintiffs argue that they never agreed to allow [the manufacturer] or anyone else—other than the dealers from which they purchased or leased their vehicles—to invoke the arbitration agreement and delegation clause. But precisely the same argument was recently raised and rejected in the context of vehicle sales agreements in *Cunningham v. Ford Motor Co.*, 2022 WL 2819115 at *4 (E.D. Mich. July 19, 2022). As the *Cunningham* court explained,
>
>> *Swiger* makes clear that ... where a plaintiff has signed a contract with an arbitration provision and a delegation clause and where a non-party to the contract seeks to compel the plaintiff to arbitrate claims that bear some relation to the contract—the question is not whether the plaintiff specifically intended that the non-party could enforce the delegation clause. Rather, the sole question is whether the delegation clause clearly and unmistakably delegates questions of arbitrability to the arbitrator.
>
> *Cunningham*, 2022 WL 2819115 at *6 (citing *Swiger*, 989 F.3d at 507). Here, the agreements clearly and unmistakably delegate arbitrability questions to the arbitrator by explicitly stating as much. *See Bossart v. Gen. Motors LLC*, 2022 WL 3573855 at *4 (E.D. Mich. Aug. 19, 2022) (concluding that an identical clause "clearly and unmistakably delegate[d] questions of arbitrability to the arbitrator.").
>
> Plaintiffs raise the exact same argument rejected in *Cunningham*—that they never intended for [defendant] or anyone other than the selling dealers to be able to enforce the arbitration clause—and the argument is foreclosed by *Swiger* for the same reasons it was in *Cunningham*. *See also Lyman v. Ford Motor Co.*, 2022 WL 856393 at *4 (E.D. Mich. Mar. 22, 2022) (whether non-signatory vehicle manufacturer could enforce arbitration provision and delegation clause was question for arbitrator); *Bossart*, 2022 WL 3573855 at *4 (same).

*Id.*; *see also Harrison v. Gen. Motors LLC*, 651 F. Supp. 3d 878 (E.D. Mich. 2023).[10] Plaintiffs here make substantively the same arguments as did those plaintiffs, and the arguments fail for the same reasons.

Accordingly, Carpio's claims are hereby sent to an arbitrator to resolve at least the threshold issue of arbitrability. As the Court did not need to reach Defendant's alternative basis of equitable estoppel in deciding the issue of arbitrability, the Court (like the Sixth Circuit in *Becker*)

---

[10] The district court cases that Plaintiffs cite as supporting their position—*Straubt*, 2021 WL 5085830 (E.D. Mich. Nov. 2, 2021) and *Schoenfeld*, 532 F. Supp. 3d 506 (S.D. Ohio 2021)—both predate *Becker*, unlike the district court cases the Court relies upon here and which accounted specifically for the *Becker* decision.

will refrain from commenting on or deciding the applicability of equitable estoppel in the current circumstances. *See Becker*, 39 F.4th at 356.

## CONCLUSION

For the aforementioned reasons, the Motion to Compel Arbitration (Doc. No. 28) is GRANTED. Specifically, Plaintiff Carpio and Defendant shall proceed to arbitration to the extent noted above, that is, at least to resolve the threshold issue of arbitrability and potentially to a greater extent depending on the arbitrator's decision regarding arbitrability. Plaintiff Carpio's claims are stayed pending arbitration. Because the Motion to Dismiss (Doc. No. 30) argues for the Court to dismiss the claims of all Plaintiffs, but Plaintiff Carpio's claims are now stayed and not subject to dismissal, the Motion to Dismiss is DENIED as moot with permission to refile a motion to dismiss specific to the claims not currently stayed.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE